# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-0379V

| | |
|---|---|
| LORI CARTER,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br>Filed: September 3, 2024 |

*Glen Howard Sturtevant, Jr., Rawls Law Group (Richmond), Richmond, VA,* for Petitioner.

*Parisa Tabassian, U.S. Department of Justice, Washington, DC,* for Respondent.

### DECISION DISMISSING PETITION[1]

On January 8, 2021, Lori Carter filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), which she later amended twice. Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") resulting from an influenza ("flu") vaccine received on February 5, 2020. Second Amended Petition (ECF No. 26) at 1.[3] The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

[3] The Second Amended Petition also includes an alternative claim that, if it was found that Petitioner suffered from an underlying immunologic, neurologic, or genetic disorder, the February 5th vaccination significantly aggravated that condition. Second Amended Petition at *1. However, Petitioner has not

For the reasons discussed below, I find that Petitioner has not established by a preponderance of the evidence that she is entitled to compensation. Thus, the claim is dismissed.

## I. Relevant Procedural History

After the case was activated, Petitioner was directed to file additional complete and certified medical records, additional evidence addressing onset and severity, and an amended petition if desired (ECF No. 24). Petitioner filed an amended petition and medical records (ECF Nos. 26, 28, 31, 34).

Thereafter, Respondent filed a motion to dismiss and Rule 4(c) Report (ECF No. 40), and Petitioner opposed (ECF No. 43). The issue of whether the case should be dismissed is now ripe for resolution.

## II. Relevant Factual History

### A. Medical Records

Petitioner received the flu vaccine alleged as causal in her left arm on February 5, 2020. Ex. 1 at 5. Although she had a history of cervical radiculopathy and cervicalgia, her last treatment for those conditions prior to vaccination was in 2016 (Ex. 4 at 24, 28, 29, 39), and it is not alleged that they contributed to her post-vaccination symptoms.

Petitioner saw her primary care physician ("PCP"), Dr. David Reyes, on February 5, 2020, the date of vaccination. Ex. 6 at 40-50; Ex. 9 at 47-58. The records from this visit are forms filled in by hand. *Id.* She reported a history of epilepsy, with a hospital visit about a year and a half prior, but no musculoskeletal problems. *Id.* Although the records are difficult to read, it appears that some testing was done or ordered, and labs were done later that month. Ex. 6 at 21-24, 52; Ex. 9 at 59, 63-65.

It appears that Petitioner saw Dr. Reyes again on March 5 and May 28, 2020, although the relevant records are sparse. Ex. 6 at 15-18; Ex. 9 at 21-25. Dr. Reyes ordered an EEG and pap smear on March 5, 2020. Ex. 6 at 18, 19; Ex. 9 at 24, 25. The records list the authorizations as "pending." *Id.* Dr. Reyes's records contain a form dated March 5, 2020 titled "Patient History and Physical Examination." Ex. 6 at 17; Ex. 9 at 23. It is filled in by hand and contains Petitioner's name, date of birth, phone number, and signature, but is otherwise blank. *Id.* Dr. Reyes's records contain an identical document, with the same information, dated May 28, 2020. Ex. 6 at 15; Ex. 9 at 21. On this date, she was given a prescription for Keflex. Ex. 6 at 16; Ex. 9 at 22. It is not clear what Petitioner

---

identified an underlying disorder, and did not address a significant aggravation claim in response to the motion to dismiss – nor would the record support such a claim.

was seen for on these dates or whether an examination was done. None of these records document any concerns with Petitioner's arm or shoulder.

Petitioner saw Dr. David Reyes on June 25, 2020, and the record of this visit appears to be an electronic medical record (contrasted with the forms filled in by hand for the prior visits). Ex. 6 at 4-5; Ex. 9 at 10-11. Her chief complaints were an itchy scalp with dandruff and a red earlobe. *Id.* The record states that her extremities functioned within normal limits, and that she displayed full motor strength for all limbs. *Id.* The record also notes that Petitioner reported "shoulder pain after receiving a flu shot. Date and time unknown. Patient complains of decreased range of motion of shoulder." Ex. 6 at 5; Ex. 9 at 11. The record does not state which shoulder was affected or specify when the symptoms began, however, other than identifying the date as "after" vaccination.

The June 25th record also contains two notes that have later dates, and thus appear to have been added later. First, the record includes a diagnosis of noncompliance with treatment, explaining that Petitioner "did not return for follow up visit. No show 7/30/2020 Cancelled refused to reschedule." Ex. 6 at 5; Ex. 9 at 11. Second, the bottom of the record contains a notation stating that Petitioner called on December 22, 2020, requesting a copy of her chart, and came in later that day and signed a release form. *Id.* She "insisted on talking to Dr. Reyes" in the office lobby (with no other patients present), and "described incident where her shoulder had been injected with flu vaccine with still present pain and decreased range of motion." *Id.* Dr. Reyes suggested an x-ray and a follow up appointment. *Id.* The note further states that Dr. Reyes's office called Petitioner on December 30, 2020, requesting that she call back and let them know whether the problem was with her right or left shoulder. *Id.* Dr. Reyes sent Petitioner a letter that same day containing a copy of a portion of the electronic record concerning the December 22nd and 30th communications. Ex. 6 at 6; Ex. 9 at 12.

Dr. Reyes's records contain what appears to be a printout of his electronic calendar for July 30, 2020. Ex. 6 at 26; Ex. 9 at 33. Petitioner's name appears at 3:30-3:45pm, followed by "CANCELLED." *Id.* Dr. Reyes's records also contain what appears to be a printout of his electronic calendar for January 4, 2021. Ex. 6 at 25; Ex. 9 at 32. Petitioner's name appears at 4:30-4:45pm, although it is unclear why, and there is no medical record suggesting that she was seen on that date. *Id.*

Dr. Reyes's records further contain a January 5, 2021 prescription and authorization for a shoulder x-ray, with diagnoses of pain and stiffness of Petitioner's left shoulder. Ex. 6 at 13; Ex. 9 at 19, 68. The authorization was approved, although it does not appear that Petitioner had the x-ray done.[4] *Id.*

---

[4] Petitioner explained in a declaration that she moved out of state in December 2020 (Ex. 13 at 1), which would explain why she did not have an x-ray that was ordered the following month.

3

Petitioner's records contain a letter dated February 9, 2021 from Dr. Reyes to Petitioner. Ex. 6 at 3; Ex. 9 at 2, 9. The letter states that her last visit as a patient was on June 25, 2020, and her health record has been available for her to pick up since the end of December 2020. *Id.*

Petitioner filed primary care records for 2022. Ex. 11. The only reference to shoulder pain is an August 20, 2022 form where she checked "yes" for shoulder pain, as well as back and neck pain, without further explanation. *Id.* at 27. It does not appear that she sought or received treatment for her shoulder on this date. *Id.*

### B. Declarations

Petitioner filed four declarations in support of her claim. Exs. 2, 7, 8, 13.[5] Petitioner states that her symptoms began with "a great deal of pain" within a few hours of receiving the flu vaccine. Ex. 7 at 1. Her arm "was so sore all the way up to [her] shoulder," and she could not lift it higher than a 45 degree angle. *Id.* As weeks and months went by, it worsened rather than improving, with extreme pain if she raised it even slightly. *Id.* She could not use her arm to undress, and could only employ her right arm in performing certain physical tasks. *Id.* She was no longer able to do her normal exercise, pushups, or yoga, and could not ride her motorcycle. *Id.* Six months later, she could finally raise her arm, but her shoulder would click as it went over her head. *Id.* As of October 2021 (when she signed the declaration filed as Exhibit 7), she still had "significant pain" and weakness in her left arm and shoulder. *Id.* at 3. She continued to have trouble putting shirts on and taking them off, and sometimes could not wear a bra. *Id.*

The flu vaccine, Petitioner maintains, was injected "extremely high" on her arm. Ex. 7 at 2. When she saw Dr. Reyes on March 5, 2020, she thought that her pain might be normal, and she did not mention it to him. *Id.* When she saw him on May 28, 2020, she "told him what was going on and described my pain from the vaccine and he told me I had to wait six months to give it time to heal before he did anything." *Id.*

Petitioner further alleges that she returned to Dr. Reyes on June 25, 2020, and told him that her shoulder was not improving. Ex. 7 at 2. He "said to wait another two months before he would refer me for an x-ray and other treatments." *Id.* He told her it sounded like a rotator cuff injury. *Id.* She explains:

> Dr. Reyes never diagnosed me with anything and did not seem to care one bit until I requested my medical records for my lawyers at the end of

---

[5] Although Petitioner labeled these documents as affidavits, they are not notarized. Nonetheless, they are acceptable as declarations pursuant to 28 U.S.C. § 1746 because they are declared true and correct under penalty of perjury.

4

> December and at that point he wanted to take immediate action and refer me to multiple doctors for x-rays and other things. I feel Dr. Reyes mainly wanted the money for referrals and I was already moving away in a few days.

Ex. 7 at 2. Petitioner adds that it was Dr. Reyes who sent her to the pharmacy where she received the vaccine, and she now thinks he was just trying to protect himself and the pharmacy. *Id.* She adds that Dr. Reyes "was not professional and did not seem qualified," even falling asleep during appointments at times. *Id.* at 3.

Petitioner's experience with Dr. Reyes, she reports, has made her uncomfortable and less trusting of doctors. Ex 10 at 1. She has not returned to a doctor to treat her left arm and shoulder, and does not intend to do so. *Id.* She continues to have a lot of pain, but has accepted living with a "damaged arm" and thus did not seek care for it with her new PCP in Nevada. *Id.* She moved from California to Nevada in December 2020 for personal reasons, feeling that she needed a change. Ex. 13 at 1.

Petitioner's mother, Effie Carter, also submitted a declaration in support of the claim. Ex. 8. Petitioner's mother states that Petitioner's arm began hurting on the day of vaccination and increased in the following days. Ex. 8 at 1. Petitioner's mother saw Petitioner the day after vaccination and could not believe how high on her arm the injection had been administered. *Id.* Petitioner told her mother that her arm was throbbing and in a great deal of pain. *Id.* After "a couple of months," Petitioner's mother told Petitioner to tell her doctor, which she did. *Id.*

Effie Carter further states that Petitioner saw Dr. Reyes on March 5, May 28, and June 25, 2020, but that he did not diagnose or treat her symptoms. Ex. 8 at 1. Petitioner "has been in pain since her vaccination and is still in pain today." *Id.* Petitioner has an "extremely high pain tolerance," and Effie Carter has never heard her complain over an injury this much. *Id.* at 1-2. She has also seen a decline in her daughter's daily activities, and Petitioner now has limited ability to exercise alone or with others. *Id.* at 2. Additionally, Petitioner is now afraid to get another vaccination. *Id.*

### III.  Legal Standards

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding his or her claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

5

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Human Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

To overcome the presumptive accuracy of medical records, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Human Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Human Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). The Federal Circuit has "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021) (explaining that a patient may not report every ailment, or a physician may enter information incorrectly or not record everything he or she observes).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying Qualifications and Aids to Interpretation ("QAI") are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological

abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

(i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time-frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

### IV. Parties' Arguments

Respondent argues that Petitioner has not met the statutory severity requirement or established that she suffered a Table SIRVA or injury caused in fact by the flu vaccine, and thus the claim should be dismissed. Respondent's Rule 4(c) Report and Motion to Dismiss, filed June 30, 2023 (ECF No. 40) ("Mot."). Respondent asserts that Petitioner has not demonstrated that she suffered SIRVA-related symptoms through August 2020 (six months after vaccination), citing "sparse and unclear medical records [that] do not corroborate petitioner's allegations of severity from her Petition or affidavits." Mot. at *5. In Respondent's view, there is no objective documentation of left shoulder symptoms persisting beyond August 2020. *Id.*

Respondent also argues that Petitioner has not provided preponderant evidence that she suffered a Table injury. Mot. at *6. The contemporaneous medical records "are entirely unclear as to the onset (and duration) of petitioner's alleged left shoulder pain" after vaccination. Mot. at *7. Respondent asserts that Petitioner's first – and seemingly last – medical appointment "that *might* have included a complaint of shoulder pain was on June 25, 2020 – more than four months post-vaccination." *Id.* And "[i]t is not at all clear

7

or apparent whether petitioner ever mentioned left shoulder issues stemming from vaccination to any medical provider between February and December 2020 (one month before she filed her Vaccine Program claim)." Although the June 25th record contains a note about shoulder pain, Respondent notes that the chief complaints for this appointment were an itchy scalp and red earlobe, and "in December 2020, it seems Dr. Reyes added comments about shoulder pain from vaccination based on petitioner's requests on December 22, 2020." *Id.* at n.7.

Additionally, there are *no* post-vaccination records of any left shoulder examinations, diagnoses, or assessments that support any vaccine-related shoulder pain or dysfunction. Mot. at *7. A special master cannot find that a vaccine-related injury occurred based solely upon the claims of a petitioner pursuant to Section 13(a)(1) of the Vaccine Act. *Id.* (citing *Lett v. Sec'y of Health & Human Servs.*, 39 Fed. Cl. 259, 260 (1997)). Respondent adds that Petitioner has not substantiated a causation-in-fact claim either, and thus the claim should be dismissed. *Id.* at *7-9

Petitioner maintains that she suffered a Table SIRVA that lasted longer than six months. Petitioner's Brief in Opposition to Respondent's Rule 4(c) Report and Motion to Dismiss, filed Oct. 20, 2023, at *5 (ECF No. 43) ("Opp."). Petitioner argues that she sought timely medical treatment for her left shoulder pain "in the context of the COVID-19 pandemic that was quickly spreading" at the time. Opp. At *5.

Despite COVID-related emergency and stay at home orders, Petitioner asserts that she sought treatment for her SIRVA on May 28, 2020. Opp. at *6. She acknowledges that "much is left to be desired by Dr. Reyes's charting and, unfortunately, he did not document Ms. Carter's complaints of left shoulder pain at this visit." *Id.* Petitioner returned to Dr. Reyes complaining of left shoulder pain on June 25th, and this time he documented her shoulder symptoms. *Id.*

Petitioner also contends that between June and December 2020, COVID-19 deaths skyrocketed and additional public health restrictions were imposed. Opp. at *6. By December 22, 2020, Petitioner's symptoms still had not resolved, so she again visited[6] Dr. Reyes. *Id.* He then ordered an x-ray, but by the time it was approved, COVID-related restrictions had been renewed and Petitioner had moved out of state. *Id.* at *6-7.

Petitioner argues that she reported the injury and sought treatment from her PCP. Opp. at *7. Dr. Reyes "eventually documented those reported symptoms, etiology of the injury, and timing of onset in two separate notes in Ms. Carter's chart – one of which was 10 months after the vaccination at issue, clearly establishing Ms. Carter experienced SIRVA-related symptoms longer than six months." *Id.* And Petitioner adds (without

---

[6] Petitioner does not propose, however (and the record does not support) that she saw Dr. Reyes as a patient on this date. Instead, the record shows that she went to his office for records and spoke with him in the lobby.

8

support) that her "left shoulder pain began fewer than 48 hours after the vaccination." Opp. at *7. Alternatively, Petitioner maintains that her injury satisfies the criteria for a causation in fact claim. *Id.* at *7-10.

## Analysis

In this case, the medical records *barely* allude to a reported shoulder problem at some point after vaccination, but do not specify when, or even in which shoulder. And there is *no* objective evidence, such as examination findings or imaging, of a post-vaccination abnormality in Petitioner's shoulder. Although Petitioner's declarations recount "a great deal of pain" beginning shortly after vaccination, this is not supported by the medical records. The only medical records that purport to support Petitioner's claimed injury are those of Dr. Reyes which, unfortunately, are sparse, difficult to read, and somewhat unclear.

The medical records suggest, at best, that Petitioner experienced shoulder pain sometime after vaccination – but do not even hint at the crucial question of *when*. The first – and only – medical record documenting shoulder pain (the June 25, 2020 record) states the pain occurred "after" vaccination, adding "[d]ate and time unknown," and does not state which shoulder was affected. Ex. 6 at 5; Ex. 9 at 11. This record is dated nearly *five months* after vaccination – a significant length of time, which only exacerbates the vagueness of the timing noted in the record and the lack of specificity as to which shoulder was affected. *See N.B. v. Sec'y of Health & Human Servs.*, No. 20-0151V, 2023 WL 183458 (Fed. Cl. Spec. Mstr. Jan. 13, 2023) (dismissing Table claim where Petitioner's first complaint was over four months after vaccination, with multiple intervening medical appointments not mentioning shoulder pain), *N.B. v. Sec'y of Health & Human Servs.*, No. 20-0151V, 2023 WL 4573213 (Fed. Cl. Spec. Mstr. June 13, 2023) (dismissing off Table claim); *Porcello v. Sec'y of Health & Human Servs.*, No. 17-1255V, 2020 WL 4725507 (Fed. Cl. Spec. Mstr. June 22, 2020) (dismissing claim where Petitioner first sought care over three months after vaccination, finding the evidence as to when her pain began to be vague and sometimes contradictory).

Petitioner's case is further weakened by the fact that this record was later altered. And it is not clear when the portion of the record pertaining to her shoulder condition was added. It is conceivable that this was added in December 2020 – which would be over *ten months* after vaccination.

Similar to *Porcello*, in this case the records are vague as to when Petitioner's shoulder pain began. Although her declaration asserts immediate onset, the medical records are simply too vague and nonspecific as to the timing, or even which shoulder was affected. And there is *no* evidence that an examination of her shoulder ever showed limitations in her range of motion. Although the June 25th record notes that Petitioner

reported shoulder pain and decreased range of motion (which may be contemporaneous, or may have been added later), on examination *no* abnormalities were noted. Ex. 6 at 4; Ex. 9 at 10. And on December 30, 2020 – nearly 11 months after vaccination – Petitioner's doctor's office called Petitioner inquiring whether her left or right shoulder was affected – further suggesting that Dr. Reyes was not familiar with her shoulder problem.

Thus, there is barely any medical record evidence suggesting which shoulder was affected – much less whether her pain was limited to the shoulder of vaccination. And the only evidence in her medical records that would support a finding that her shoulder pain continued for at least six months is a note from a date when the record indicates Petitioner only spoke to the doctor in a lobby, and there is no evidence Petitioner was actually seen for a medical consultation. Petitioner cancelled a scheduled appointment with Dr. Reyes on July 30, 2020 – just before the six month mark. Petitioner has not addressed this cancellation, and while on its own a cancelled appointment may not establish lack of a persistent injury, in the context of the remaining evidence, it further clouds Petitioner's claim that she was experiencing shoulder pain at that time.

Petitioner's motion glosses over the inadequacies in the records, relying heavily on the fact that Petitioner's alleged injury occurred around the time that the COVID-19 Pandemic was declared and various stay at home orders were issued. Yet records from before the start of the Pandemic (such as at the March 5, 2020 PCP visit) make no mention of pain, and Petitioner's declarations state only that she did not report shoulder pain at that time because she thought her pain might be normal, and that when she reported pain on May 28th, Dr. Reyes told her to wait six months before he would treat her. Ex. 7 at 2. While it is common in Program cases for petitioners to downplay or misapprehend SIRVA pain, the overall record in this case is far less supportive of that conclusion.

As to onset, Petitioner's motion asserts that "it is clear that Ms. Carter's left shoulder pain began after receipt of the flu vaccine on February 5, 2020 . . . the left shoulder pain began fewer than 48 hours after vaccination." Opp. at *7. But the only record evidence to this effect is her declaration. While declarations may be used to corroborate medical records, in this case the medical records are bereft of documentation of a shoulder condition.

In these circumstances, even if I were to credit all statements in Petitioner's declarations, there is simply not enough medical record evidence to support a Table or off Table claim.

## Conclusion

**Petitioner has failed to establish that her injury meets the requirements for a Table SIRVA, or a shoulder injury caused in fact by the flu vaccine. Accordingly, Respondent's motion to dismiss is GRANTED and this case is DISMISSED for insufficient evidence. The Clerk of Court shall enter judgment accordingly.[7]**

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[7] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.